UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GULF HARBOUR INVESTMENTS
CORPORATION,

                      Plaintiff,

                22-cv-10059 (PKC)

        -against-

                OPINION AND ORDER

CIT BANK, N.A.,

                      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        In 2019, plaintiff Gulf Harbour Investments Corporation ("Gulf Harbour") purchased non-performing residential mortgage loans with an outstanding principal balance of approximately $312 million from Deutsche Bank National Trust Company. (First Amended Complaint ("FAC"), ECF 19, ¶ 8). In the FAC, Gulf Harbour alleges that when it made the acquisition, CIT Bank, N.A. ("CIT Bank") was the "servicer of record" for the majority of the loans. (Id. ¶ 8). As the loan servicer, it maintained the underlying loan documentation and servicing transfer data. (Id. ¶ 9). Gulf Harbour alleges that "CIT failed to provide the necessary transfer data and loan documentation and, in fact, discontinued its maintenance of loan records and destroyed original loan documentation." (Id. ¶ 9). Further, CIT Bank issued IRS forms cancelling some of the loans that Gulf Harbour purchased and failed to disclose to Gulf Harbour that it had done so. (Id. ¶ 11).

Gulf Harbour now brings claims for replevin, conversion, and tortious interference with contractual relations against CIT Bank[1]. CIT Bank moves to dismiss Gulf Harbour's First Amended Complaint based on a lack of personal jurisdiction, Rule 12(b)(2), Fed. R. Civ. P., and failure to state a claim, Rule 12(b)(6), Fed. R. Civ. P. (ECF 25). Gulf Harbour requests that if the Court concludes it lacks personal jurisdiction over CIT Bank, the Court grant Gulf Harbour the opportunity to pursue limited jurisdictional discovery. (ECF 30, at 15). For reasons that will be explained, CIT Bank's motion to dismiss for lack of personal jurisdiction will be granted. Gulf Harbour's request for limited jurisdictional discovery will be denied.

BACKGROUND

The Court assumes the truth of the well-pleaded factual allegations of Gulf Harbour's FAC described below. Hospital Building Co. v. Trustees of the Rex Hospital, 425 U.S. 738, 740 (1976).

Gulf Harbour is a corporation incorporated in Delaware with its principal place of business in Florida that invests in non-performing residential mortgage loans. (FAC ¶¶ 1-2, 7). In June 2019, it purchased 3,907 non-performing residential mortgage loans with an outstanding principal balance of approximately $312 million from Deutsche Bank National Trust Company. (Id. ¶ 8). At the time of the purchase, CIT Bank was the "servicer of record" for 2,866 of the loans, representing an outstanding principal balance of roughly $232 million. (Id.). 63 of these loans were mortgage loans on real property located in the state of New York. (Id. ¶ 5). As the servicer of these loans, CIT Bank maintained underlying loan-level documentation and computer data on the loans. (Id. ¶ 7). Gulf Harbour requires the loan documentation and

---

[1] CIT Bank merged with First-Citizens Bank & Trust Company ("First Citizens") in January 2022. (ECF 28, ¶ 2). First Citizens was the surviving entity. (Id.). The defendant, however, refers to itself as CIT Bank in its filings, see ECF 26, at page 1, note 1, and the Court does the same.

computer data maintained by CIT Bank to enforce its rights in the loans it purchased from Deutsche Bank. (Id. ¶¶ 7-9).

In July 2021, Gulf Harbour sued CIT Bank, seeking injunctive relief requiring CIT Bank to turn over missing data and loan documentation as well as damages. (Id. ¶ 12). In December 2021, the parties agreed to dismiss the action without prejudice pursuant to a "Dismissal and Production Agreement." (Id. ¶ 13). Pursuant to that agreement, CIT Bank agreed to provide Gulf Harbour with loan documentation in its possession. (Id. ¶ 15). It produced 209,750 electronic copies of original loan documentation. (Id. ¶ 19). Gulf Harbour determined that the documents provided were 1) copies of the original note or home equity line of credit agreement, 2) copies of the original mortgage or deed of trust, 3) copies of the original loan application, 4) copies of statements, and 5) copies of correspondence sent to consumers. (Id. ¶ 20).

Gulf Harbour alleges deficiencies in the documents and data provided to it by CIT Bank. (Id. ¶ 25). Gulf Harbour asserts that CIT Bank has not produced any of the original loan documentation and that the loan documentation and data that CIT Bank has produced is not in the customary format of an electronic data tape. (Id. ¶¶ 22, 26). It also asserts "many instances where data should have been maintained by CIT, but was not," requiring Gulf Harbour to examine the underlying documents to attempt to find the missing data. (Id. ¶ 24).

CIT Bank also produced 6,295 electronic documents to Gulf Harbour that included IRS Forms 1099-C (cancellations of debt). (Id. ¶ 16). Gulf Harbour identified 1,716 unique Forms 1099-C that CIT Bank had issued to borrowers between 2009 and 2012 representing debt cancellations on 906 loans with an aggregate unpaid principal balance of

$69,667,308.12.  (Id. ¶ 17).  CIT Bank allegedly failed to disclose that it had issued the IRS forms cancelling some of the debts Gulf Harbour purchased.  (Id. ¶¶ 12, 18).

Gulf Harbour further contends that "sometime in 2013, CIT arbitrarily, and without cause, disclosure or consent, unilaterally ceased its daily servicing of the Mortgage Loans" without informing Deutsche Bank or Gulf Harbour.  (Id. ¶ 27).  In the absence of notice, Gulf Harbour and Deutsche Bank considered CIT Bank to be the servicer of record and custodian of loan documentation at the time Gulf Harbour bought the loans from Deutsche Bank.  (Id.).

Gulf Harbour asserts three claims against CIT Bank: replevin, conversion, and tortious interference with contractual relations.  CIT Bank has moved to dismiss the complaint in its entirety. (ECF 25).  It contends that this Court lacks personal jurisdiction over CIT Bank and that Gulf Harbour has failed to state a claim for each of its state law claims.

DISCUSSION

The Court Lacks Personal Jurisdiction over CIT Bank

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  If a "defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Prior to discovery, a plaintiff facing a Rule 12(b)(2) motion may defeat the motion by pleading, in good faith, legally sufficient allegations of jurisdiction.  Metropolitan Life Insurance Co., 84 F.3d at 566.  In deciding a

4

motion to dismiss for a lack of personal jurisdiction, the Court may rely on materials that are outside the pleadings, including any affidavits submitted by the parties. DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001). The plaintiff's pleadings and affidavits are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010).

CIT Bank merged with First-Citizens Bank & Trust Company ("First Citizens") in January 2022. (ECF 28 ¶ 2). First Citizens is the surviving entity. (Id.). It is a state-chartered bank incorporated in North Carolina with a principal place of business in North Carolina. (Id. ¶ 3). When CIT Bank serviced the mortgage loans at issue, it was known as OneWest Bank N.A. ("OneWest")[2]. (Id. ¶ 9). OneWest was a national bank with a headquarters and principal place of business in California. (Id.). It had no branches in New York. (Id. ¶ 10). It conducted its mortgage servicing operations from California, Michigan, and Texas, and maintained mortgage servicing records in those states. (Id. ¶ 11). The loan level documentation and data has never been stored or maintained in New York. (Id. ¶ 11, 14). Of the 2,866 mortgage loans Gulf Harbour acquired that were serviced by CIT Bank, 63 of the loans were for real property located in New York. (ECF 30, at 3). CIT Bank sent tax forms and other correspondence to these New York borrowers, including IRS Forms 1099-C. (Id., see also ECF 30-2).

"In diversity cases such as this one, personal jurisdiction is governed by the law of the forum state and limited by federal due process requirements." Fat Brands Inc. v. Ramjeet,

---

[2] The parties do not address whether First Citizens, as the surviving entity of a merger between CIT Bank and First Citizens, has acquired the jurisdictional contacts of CIT Bank. See U.S. Bank National Association v. Bank of America N.A., 916 F.3d 143, 158 (2d Cir. 2019) (Chin, J., concurring) ("[I]t is not always the case that an acquired company's jurisdictional contacts can be imputed to the successor-by-merger."). Since the defendant did not raise this argument in its pleadings, the Court deems it waived. Fed. R. Civ. P. 12(h)(1).

75 F.4th 118, 125 (2d Cir. 2023). Under New York law, a court may exercise personal jurisdiction over a non-resident defendant based on either general or specific jurisdiction. Gulf Harbour does not seek to establish general jurisdiction over CIT Bank, and the relevant inquiry is thus whether specific jurisdiction exists under N.Y. C.P.L.R. § 302. Relevant here, New York's long-arm statute provides for personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Because Gulf Harbour's assertion of personal jurisdiction "rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012).

To establish personal jurisdiction under § 302(a)(1), two requirements must be met: (1) the defendant transacted business within New York and (2) the plaintiff's claims arose from those business transactions. See McGowan v. Smith, 52 N.Y.2d 268, 273 (1981). This section "is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983) (internal citation omitted). Gulf Harbour contends that this Court has personal jurisdiction over CIT Bank under § 302(a)(1) because (1) CIT Bank transacted business within New York by servicing the 63 mortgage loans on property in New York and (2) Gulf Harbour's three causes of action—replevin, conversion, and tortious interference with contractual relations—arose from CIT Bank's servicing of these 63 loans. The Court agrees that CIT Bank's New York loan servicing activities constitute the transaction of business within the state sufficient to meet the first requirement. The Court concludes, however,

that Gulf Harbour has not pleaded a *prima facie* case that its claims arise from these New York activities.

The inquiry into the relationship between the defendant's transaction of business in New York and the claim asserted by the plaintiff "confer[s] jurisdiction only over those claims in some way arguably connected to the transaction." Licci v. Lebanese Canadian Bank, 20 N.Y.3d 327, 339-40 (2012). The "arising from" requirement of "the jurisdictional inquiry [] require[s] that, in light of all the circumstances, there must be an 'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted." Id. at 339 (internal citations and quotations omitted). The application of this prong "varies according to the nature and elements of the particular causes of action pleaded . . . ." Id. at 340.

While a "relatively permissive" inquiry, "not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction." Daou v. BLC Bank, S.A.L., 42 F.4th 120, 130 (2d Cir. 2022). If the connection is "too attenuated" or "merely coincidental," it will not support jurisdiction. Johnson v. Ward, 4 N.Y.3d 516, 520 (2005). In Johnson v. Ward, for example, a non-resident of New York with a New York driver's license and registration was involved in a car accident with another driver in New Jersey and sued in the New York courts for negligence. The New York Court of Appeals assumed that the defendant negligent driver had transacted business in New York by obtaining his license and registration in the state, but held that doing so did not confer jurisdiction under section 302(a)(1) in a negligence suit because the cause of action arose from the driver's negligent driving in New Jersey, not his acquisition of a New York driver's license and registration. The connection between the New York license and registration and the negligence claim was too attenuated for the claim to "arise from" the New York activities because "the negligent driver could have had a

7

license from any state, or no license—that defendant had a New York license and registration [was] merely coincidental." Id. at 520.

Construing the pleadings and affidavits in the light most favorable to Gulf Harbour and resolving all doubts in its favor, the connection between CIT Bank's New York business activities and Gulf Harbour's causes of actions is too attenuated to confer jurisdiction under section 302(a)(1). Gulf Harbour's causes of action each arise from CIT Bank's alleged failure to maintain and provide Gulf Harbour with the loan documentation and data it needs to enforce its rights in the mortgage loans it purchased from Deutsche Bank. Gulf Harbour's replevin cause of action alleges that Gulf Harbour has a superior right to the loan documentation and data that CIT Bank possesses but refuses to provide to Gulf Harbour. (FAC ¶¶ 38-41). Its conversion cause of action alleges Gulf Harbour has the right to possess the loan documentation and transfer data that is in the unauthorized possession of CIT Bank. (Id. ¶¶ 44-47). Its tortious interference with contractual relations cause of action alleges that CIT Bank has interfered with the contractual relationship between Gulf Harbour and the mortgage loan borrowers by failing to provide Gulf Harbour with the loan documentation and accurate account data it needs to enforce its contracts with the borrowers. (Id. ¶ 52-54).

CIT Bank maintains the mortgage servicing documentation and data in California, Michigan, and Texas. (ECF 28, ¶ 11). When it provided documents to Gulf Harbour pursuant to the Dismissal and Production Agreement, it did so from California. (Id. ¶ 13). Gulf Harbour's causes of action based on CIT Bank's failure to provide loan documentation and data thus arose out of CIT Bank's conduct in California, Michigan, and Texas, not New York. Similarly, CIT Bank's alleged failure to maintain the loan documentation sufficient to enable Gulf Harbour to

enforce its contractual rights against the borrowers occurred in the states where OneWest conducted its mortgage-servicing operations—California, Michigan, and Texas. (Id. ¶ 11).

Gulf Harbour contends that its causes of action are "substantially related" to the New York activities because "[w]ithout the paper memorializing mortgage loans on New York properties, [Gulf Harbour] cannot enforce its rights in the New York Loans or service the loans." (ECF 30, at 19). Nowhere in Gulf Harbour's complaint, however, does it allege that CIT Bank has failed to provide it with the loan documentation and data for the loans securing properties located in New York. Even if Gulf Harbour did make such an allegation, the Court would still find it insufficient to support jurisdiction under § 302(a)(1). It is merely coincidental that 63 of the 2,866 underlying mortgage loans secured property located in New York. Just as the defendant driver in Johnson "could have had a license from any state, or no license," id., 4 N.Y.3d at 520, the underlying mortgage loans could have secured property in any state in the country without affecting Gulf Harbour's causes of action. See also Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 765 (2d Cir. 1983) (holding that a company's shipment of goods into New York did not suffice for jurisdiction under section 302(a)(1) when the "cause of action would exist regardless of whether [the defendant's] products were sent to New York"); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 321-22 (2d Cir. 1964) (plaintiffs' negligence claim arose from negligent driving of the driver for the defendant bus company that occurred in Arizona, not the plaintiffs' purchase of bus tickets in New York).

Indeed, under Gulf Harbour's reasoning, personal jurisdiction over CIT Bank would be proper in every state where one of the 2,866 mortgage loans secure real property. Gulf Harbour relies principally on U.S. Bank National Association v. Bank of America N.A., 916 F.3d 143 (2d Cir. 2019), to support its claim of personal jurisdiction over CIT Bank. In that

9

case, defendant Bank of America's predecessor, LaSalle Bank N.A., agreed to sell a mortgage loan portfolio to an entity acting on behalf of a trust for which U.S. Bank served as the trustee. The sale was pursuant to a Mortgage Loan Purchase Agreement in which the seller, LaSalle Bank, represented ("Representation Number 8") that none of the loans were subject to any restrictions that would affect the mortgagor's ability to pay its obligations under the mortgage loan or adversely affect the value of the mortgaged property. One of the loans in the portfolio was secured by a mortgage on a building in Indiana, and the building's deed included a restriction on the building's use that ultimately caused the mortgagor to default on the loan. U.S. Bank sued Bank of America for breaching Representation Number 8. The Second Circuit concluded that Indiana had specific jurisdiction over Bank of America in the breach of contract action because an alleged breach of the contractual representation related directly to a property located in Indiana. Id. at 151-52. The connection between the Indiana property and the breach of contract cause of action in U.S. Bank is far more direct than the connection at issue in this case—the breach of contract was caused by a restriction in the Indiana deed that conflicted with Representation 8. In contrast, the New York properties secured a small number of the loans in a loan portfolio, and Gulf Harbour's central allegation is that CIT Bank has not provided it with full and accurate documentation for the entire loan portfolio, an allegation with no direct nexus to New York.

For similar reasons, exercising personal jurisdiction over CIT Bank would not comport with the constitutional constraints imposed by the Due Process Clause of the Fourteenth Amendment. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden v. Fiore, 571 U.S. 277, 283 (2014). For nonresident defendants that have not consented to jurisdiction in the

forum state, the Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017, 1024 (2021). For a court to exercise general jurisdiction over a defendant, the defendant's affiliations with the forum state must be so extensive that the defendant is "essentially at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 138 (2014) (internal quotation omitted). It is undisputed that CIT Bank's contacts with New York are not so extensive that they render CIT Bank "essentially at home" in the state.

   Like N.Y. C.P.L.R. § 302(a)(1), for a court to exercise specific jurisdiction over a non-resident defendant consistently with the Fourteenth Amendment's Due Process Clause, the plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum." Ford Motor Co., 141 S. Ct. at 1025 (internal quotations omitted). In short, for this Court to assert specific jurisdiction consistently with due process over Gulf Harbour's claims, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." Bristol-Meyers Squibb Co. v. Superior Court of California, San Francisco County, 582 U.S. 255, 265 (2017). Gulf Harbour's claims arise out of CIT Bank's alleged failure to provide and maintain adequate documentation and data for the entire loan portfolio—activities that occurred in California, Michigan, and Texas. The conduct giving rise to Gulf Harbour's claims did not occur in New York. See id; Walden, 571 U.S. at 289 ("[N]one of [defendant's] challenged conduct had anything to do with [the forum state] itself."). While CIT Bank serviced 63 loans securing property in New York —roughly 2.2% of all loans in the portfolio, Gulf Harbour's claims lack any connection between the servicing of these loans and CIT Bank's alleged failure to provide the documentation and data for the loan portfolio.

Accordingly, the Court concludes that Gulf Harbour has failed to plausibly allege that a "substantial relationship" exists between its claims and CIT Bank's transactions of business in New York. Gulf Harbour thus cannot establish jurisdiction exists under New York's long-arm statute. Similarly, Gulf Harbour has failed to plausibly allege that its causes of action "arise out of or relate to" CIT Bank's activities in New York, and the exercise of specific personal jurisdiction over CIT Bank would not comport with the Due Process Clause of the Fourteenth Amendment.

Gulf Harbour requests that the Court order jurisdictional discovery as to its claims against CIT Bank instead of dismissing the claims for lack of personal jurisdiction. (ECF 30, at 15). "A district court has wide latitude to determine the scope of discovery, . . . and is typically within its discretion to deny jurisdictional discovery when the plaintiff has not made out a prima facie case for jurisdiction." Daou, 42 F.4th at 133 n.6 (alterations omitted) (quoting Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 401 (2d Cir. 2009)). In light of Gulf Harbour's failure to plead a *prima facie* case for personal jurisdiction over CIT Bank in its first amended complaint, the Court concludes that jurisdictional discovery is not warranted and will deny Gulf Harbour's request for jurisdictional discovery.

CONCLUSION

CIT Bank's motion to dismiss for lack of personal jurisdiction (ECF 25) is granted. CIT Bank's request for oral argument (ECF 29) is denied as moot.

SO ORDERED.

P. Kevin Castel  
United States District Judge

Dated: New York, New York  
December 22, 2023